Next we'll hear argument in appeal number 06-1535, Safety Care MFG v. Tele-Made. Mr. Egbert, good morning. Welcome to the court. Please proceed. My name is John Egbert, my associate Paul Hart. We're here to represent Safety Care Manufacturing in the field of the decision of the Southern District of Texas in connection with our patent infringement case on a very actual case. Plenary judgment non-infringement. Wrong because? Because we submitted substantial evidence showing that there was infringement, at least enough evidence to show that when evaluating the evidence in the light most favorable to the non-movement, we have a case. Does it depend on claim construction or claim construction application to the bid? We were happy with the claim construction under the Markham hearing, so it has to deal with how the claims were construed as against the bid itself. I'm confused because parties seem to be all over the place here. One side likes the original construction and the other side also seems to like it, and then one side says, but there was a different construction later at summary judgment and it was wrong, and the other side says there wasn't a different construction at summary judgment, so I'm totally baffled by what the operative construction was here. Now what's the operative construction that drove the judgment that we're here reviewing? The operative construction was a force that was defining the term pushing force in the claim to be a force exerted away from the body exerted. What does that mean? What's the body? Obviously the body would be motor housing, the frame that the motor housing is connected to. When I was going through this, it occurred to me that in the specification it talks specifically about the motors applying a pushing force against the lift dogs to cause the lift. Then when you go to claim one, it's much broader because it talks about the motor exerting a pushing force just to cause the lift, which would mean there could be all sorts of lift dogs and other structural elements as long as it ended up in an upward function. Claim 12 is kind of in between. It talks about motors coupled to the deck sections for exerting a pushing force on the deck sections. Neither of those are as specific as the specification. The claim construction really didn't address what the pushing force had to be against, I don't think. I think that's the factual issue that we're left with here, aren't we? I think your analysis is fairly accurate. I think the claim language does specify, if you put in force exerted against a lift direction away from the body exerting it, and you put that phrase into the claim language, it would say force exerted against the deck section of the deck. That would be pretty difficult to do, though, isn't it? What does the claim say? The claim says a plurality of electric motors were exerting a pushing force on said plurality of deck sections. So it's pushing force. That is correct. So how else would you read that except as a pushing force? Pushing force against what? A pushing force against the deck sections is 100% accurate. So that's what the judge established in his Markman order, didn't he? The judge concluded, Judge Gilmour, during the Markman hearing, I believe just adopted a dictionary definition of pushing force. During the summary judgment, the judge started to adopt a rolling definition of pushing force. It means this here, and I don't like to screw it to mean you can't have any pulling force in order to meet this limitation. And so you're right, it did tend to go all over the place. Did you help her in this exercise? We tried our best. Did you try to do it? We tried our best. Because it was pushing and pulling force. There was one statement made in the record which I thought was pretty accurate as to the existence of a Markman hearing. Why do we need a Markman hearing when the terms are pretty straightforward, pushing and pulling? I think everybody knows what that means. I believe that's correct. The judge insisted on providing a definition. I think under certain circumstances it makes sense to me as a patent practitioner, as a patent litigator, that certain terms, the word think, the term one, various terms, you can apply a definition to it, but suddenly the definition starts to stray too far from the original meaning of a very simple word. That simple word is pushing force. Well, it seems to me that you're trying to push the force into a pulling force. Isn't that the entire exercise? I'm not sure I understand. Are you trying to translate a pushing force into a pulling force? No, not at all. What is your position? Our position is that there's a pushing force against the deck section. At least the motor exerts a pushing force against the deck section. There's a pulling component there, much the way a motor can act on a crank in order to exert a pushing force. So there's both a pulling force and a pushing force on the bed, but if you compare it with the plane language, ultimately they have a plurality of electric motors that exert a pushing force upon the deck section of the bed. In one case it might be directly, in another case it might be, the motor's function might be direct versus an indirect exertion of the pushing force? That's exactly right. Whenever you apply a pull to a crank, of course, the other side of the crank pushes, and it still pushes against the deck section of the bed. It's still a pushing force directed away from the body, which is the motor housing, away from it. Another thing, the patent does relate to some extent about the safety feature of it being a pushing force as opposed to a pulling force. In the example you just gave with that crank, assuming we should pay any attention to the specification and why this is an important aspect of the feature, would that satisfy that safety concern, the way you've described how a pulling force might indirectly exert a pushing force? Of course, of course. That would solve the same problem. I think where some confusion occurs... How does it solve the same problem? You have a shaft, an axle, that's mounted right below where the bed would possibly fall down, and so the axle itself, or the back side of the crank, could stop the bed from falling down. But if you're looking at what pulling force originally meant, we had a deposition of the expert who said he was thinking of those beds in the past where there was a cable connected to the frame and a motor underneath the bed, and you operate the motor in order to draw the cable, and then you lift up and into the bed. Is that the prior art that the patentee's talking about? Because it was unclear to me what the prior art really was. Since we never met the patentee, we just acquired the patent in a bidding war, so we have no idea what was directly intended by the patentee. We had a deposition of the patent attorney who said that's what he was thinking about, but he wasn't intimately familiar himself with the prior art of hospital beds. Now what we really want is an opportunity to be heard. At least we would hope for a fair trial in this case. This is part of a trilogy where I'm here in the court. I achieved a bit of a hat trick because I managed to get three summary judgments of non-infringement representing patent owners in one month out of the Southern District of Texas. What's the relevance of that? I believe the courts in the Southern District are disposing of these cases very quickly by granting summary judgment on non-infringement. If they're correct on the claim construction and its application, then they're rightly so decided. If they're not correct, then they're not rightly so deciding, and that's the issue before us. So I don't see how the alleged frequency of it tells us anything about whether it was done accurately in this case. I would agree with you. It's just marginally relevant and you're 100% correct that of course I could be wrong in each of these cases. You always have a concern when you have a judge writing an opinion that says all of these facts are undisputed. And being the person that wrote the response to the motion for summary judgment, you can't imagine anything that was more disputed in this case than an issue of pushing force versus pulling force. We offered expert testimony in the form of affidavits saying that the Burke bed exerted a pushing force. We had a fact-check saying the Burke bed's motor exerted a pushing force against the deck section. We even provided the court with diagrams. Yet the court's conclusion was that it was undisputed. That tells me administratively they were trying to tear up the case, didn't read the responsive brief, or just used the word undisputed to simplify matters or improve them. We certainly can't decide the case based on your speculation as to what a trial judge read or didn't read. We have to assume that the trial judge read everything, thought about everything, and applied it the best he or she could. So it's not helpful to say you don't even believe she read the papers. Oh, that's correct. And with due respect to Judge Milmore, it becomes difficult issues for the trial court. It's just fundamentally error for an opinion to say that you don't have to submit your analysis as to why this is true because it was undisputed, when in fact the records show there couldn't have been anything more disputed than that particular issue. Well, let me ask you this. Is there any dispute about the mechanical means of operation of the cued bed? Don't both sides agree? The motor does this, and then the next thing does that, and then the next thing does that, and then the foot section pops up. I believe the operation of the bed is undisputed. So what the dispute then seems to be, at least in my tortured view here, is over the proper construction of pushing force, not over how does the defendant's bed work. And that would be correct, Your Honor. So then it's a markman issue, not an infringement issue. I believe you're correct on that. I believe that a plain interpretation could resolve that matter. Of course, you do have certain issues of proof where it's a three-dimensional object with three-dimensional viewing, and it's possible that merely seeing things on a DVD, on a photograph, on a diagram, doesn't fully generate in the mind the nature of the pushing force applied to the bed section by the linkage connected to the motor. Was there some prior art where there was an upward pulling by a cable attached to the foot section? I guess we're aware of that. Pardon? We're aware of that, but I don't believe that was ever provided to the judge in any of the briefings. Well, I'm just trying to understand. I understand that's not in the record, but I'm just trying to get the common sense of this. The claim drafter apparently was trying to distinguish over some prior art that used pulleys from above, I'm guessing? Yeah, there were some pulleys from above that exerted a pure pushing force on the deck sections. Pure pulling. Pulling force, yes. So what this drafter presumably was trying to make clear is that in the invention, he was drafting claims for the foot section got raised because something underneath it, turns out to be a dog, pushed it upward. Yes, Your Honor. I don't think that was the invention. Quite clearly the invention of our Claim 12 are the slide-out extensions on the deck. That's what generated a bit of a bidding war for the patent. I don't care what made it patentable. I'm just trying to figure out this one limitation of pushing force, what it meant, what it was intended to mean, what it should be construed as meaning. It should be construed by its claim meaning. You often have claims, but what the drafter of the claim thinks is more or less throwaway. What should she have done? Should she have said, in deciding whether there's a pushing force, I should look at the dog. If the dog pushes, it's met. If the dog pulls, it's not met. And in this case, everybody would agree, I think it's the dog pushing. It's a vertical construction, yes. But instead of focusing on the dog, she apparently focused on the motor itself. Although she didn't use the word motor, she used the word body. Yes. Whatever she meant by that, I wasn't clear. Do you think she meant the motor or its housing? Housing, yes. But do you agree with me that she's even talking about what the dog does? If she intended to exclude the birthday, of course. Of course, we have no disagreement. She construed the claims to mean that the claims, when it says pushing force, have to refer to the action on the dog. Absolutely no infringement there. But if you plug her interpretation into the claims, it specifically says a body exerting a pushing force away from the body exerting it onto the respective deck sections of the bed. All right, let's hear from Mr. Strong. I have one question for Mr. Edwards. You filed a 54-B motion to finalize this judgment. In your motion you said the final judgment is construed by the federal court as not a final judgment. Don't you think we have the ability to determine whether or not it's a final judgment? We sent you a letter to that effect. You should get a 54-B if it's not a final judgment. I presume that the request was made by the court in order to at least air this case as a final judgment. Otherwise, we would have no jurisdiction. That is correct. Perhaps that is partially my misinterpretation. Just because the district court says it's final, with all due respect to the district court, does not make it final if they're cross-claim pending. Yes, Your Honor, we fully understand that. We have a concern about how that position on jurisdiction might affect past cases that were decided under similar circumstances. It might appear that this court did not have jurisdiction at that point in time. Maybe those are advisory opinions. Yes, but we're perfectly willing to accept that. You're willing to accept it? Well, the Supreme Court makes us accept it. We have to have final judgments in order to have jurisdiction. Absolutely. There were counterclaims here that were never adjudicated, right? There were not my counterclaims. I don't recall them. I don't care whose they were. That's not the point. There were claims other than the infringement claim that were pled in this case, that were in the case, that were not disposed of and not covered by anything until you got the 54-B judgment. That's true. You're correct about that. It wasn't adjudicated. That's why it wasn't final, absent the 54-B judgment. It had nothing to do with our construing it. You didn't need to construe it. All you need to see is there are unadjudicated claims and automatically, by definition, it's not final. With all due respect to the court, I was harsh in my language and chose an improper term there when I said construing. It should have probably been ordered. In any event. All right, we'll hear from Mr. Strunkwick. Throw us a life raft here. At least one of us needs some help. I can't even understand what she did, much less whether it was correct or incorrect. I'm going to focus first on the claim construction issues because I think the best point of action is, first of all, Jack, I'm going to try this out first. The fundamental premise of this pattern is that in this bariatric bed art, motors that exert a pushing force are different from and better than motors that exert a pulling force. This is a pattern about what kind of motor you have. I would look first in the pattern at the background of the invention. You got me confused right in the first minute here. There's nothing in the claim that I recall that specified one type of motor from another type of motor. Yes, there is, Your Honor. It says electric motors for exerting a pushing force. So it says a motor for exerting a pushing force. But isn't the real issue what it pushes against, isn't that the issue in this case, and it's not specifically addressed in the claim language? Well, you have to construe the claim in light of the specification. I think that electric motors for exerting a pushing force is pretty much as clear as it could have been in saying that the motor has to exert a pushing force because it doesn't say a pushing force on the deck section. It says a motor for exerting a pushing force. Electric motors for exerting a pushing force. So that's what it says in the claim language itself. If there is any question about which of the two constructions is favored, it is resolved conclusively when you look at the specification because what he does is he talks about the problems with motors that exert a pulling force which are known in the art. The problem that he identifies, this is at the bottom of column one, is that the motors that exert a pulling force will collapse and the thing will fall down suddenly. And what he says is, and he's not talking about linkages or how it's all linked up, he says that's an inherent problem with the motor itself. And he says that that problem is solved by using a motor that exerts a pushing force. So at the bottom of column one he identifies the problem and in every instance in the specification when he's talking about the motors, he talks about the motors applying pushing forces, the motors applying pulling forces. That is totally consistent with the claim language. So I'm not, for example, perhaps they're all cited in our brief, but I'm looking at column two, around line 25 to 30. The pushing as opposed to pulling forces applied by the electric motors to raise the frame and the mattress support deck sections avoid possible injury to the patient in the event that one of the motors should break. So what this patent is doing is dealing with the problem of what happens if the motor breaks. And that's why the district court, in her summary judgment decision, the court said that Burke's motor is undisputed. It applies a pulling force rather than a pushing force and so therefore it doesn't fall within the scope of this claim. But what happens if Burke's motor breaks? According to this patent, they have not asserted an argument under the doctrine of equivalence, but according to this patent it would collapse. That's what this would say. Except what the patentee is saying here is true. The patentee represented the patent office. Because it is clearly, there's a motor that exerts a pulling force and he says that motors that exert pulling forces collapse suddenly. I'm asking you a question about your bed. If the motor in your bed in hospital room 101 suddenly breaks, what happens to the bed? They use a stronger, they have to use a stronger actuator because it's a pulling actuator. They're rated differently. And so, in Burke's view, it's a safe bed. You're not answering my question. In the Burke bed, when the motor breaks, what happens to the mattress? I have not seen when the motors break. So I don't know. It's not a different job. It's the best I can do with that. So we don't know whether the Burke bed avoids the problem that the patentee was describing here or not. That's correct. What we know is that the Burke bed doesn't meet the claim language. It doesn't meet the claim as well. It doesn't meet it, but the claim language is construed to mean that the motor has to directly apply the pushing force that lifts the section. And I guess, it's hard to reenact the record or to determine from the record exactly how the accused bed works, but my impression is that you have a pulling force that still applies pressure. Well, there still has to be a pushing force at some point to lift the bed, even if it's indirectly applied, unless I'm truly not understanding, and I'd like your help in that. Okay, sure. I think that the clearest way to look at it with what we have before us, I think the video also... I couldn't get the video to work. Is it more than 23 seconds long? No, it is just 23 seconds. Well, then it wasn't helpful. I can't grasp physics in 23 seconds. Let me try to work it this way. If you're looking at page 290 or 292 of the appendices and pictures, first, 290 shows that all the bed sections are flat. Then 291, and within that view, the motor is sort of obscured. You see the motor here on the right with the attached actuator, and the motor exerts a pulling force towards itself and the parties aren't disputing. The pushing is away from the body, and the body is exerting the force of the motor. But isn't the lift-dog applying a pushing force to the deck section? I would say, in looking at this particular design, the lift-dog is still pulling because it's going towards the motor. Never mind. The lift-dog isn't pulling no matter what direction it's moving in because it's forcing the deck section upward compared to the frame. Right, the deck section is clearly going upward. And it's going upward because the dog is forcing it to go upward. So how can we say the dog isn't applying an upward pushing force? But the motor is applying a force towards itself. That's perfectly correct. So I think Chief Judge Robinson has us on a very good track when she suggests that it depends whether you're talking about the motor or the dog when you try to decide, is there a pushing force here? In the case of the motor, no. In the case of the dog, yes. So it seems like the outcome stands on whether the body that has to do the pushing force is the motor or whether it's the dog. But under the claim, what is it? Is it the dog or is it the motor? Well, the claim doesn't say anything about the dog. And I would say that the claim says there has to be a motor for exerting the pushing force. So I'd say the claim indicates that there has to be a motor. And if you have any doubt about it, you've got to look at the specification as the primary tool of determination. Well, if you look at Claim 1, though, it just says a motor exerts a pushing force to cause. Now, I know Claim 1 isn't. Right. But would you agree that that would necessarily cover an instance where a motor exerts a pulling to exert a pushing because it just causes? I think in this pattern, it's got to be pushing. It has to be direct. And it always has to be the motor pushing. In Claim 1, the language is very slightly different. It says a motor to exert a pushing force rather than for exerting a pushing force. It isn't clear to me that that to or for is, to exert or for exerting, has any meaningful distinction. But when you look at the specification, all it talks about is that motors that exert pushing forces are good, motors that exert pulling forces are bad because they can collapse. Even the point here is not pointed to one word in the specification. It supports its view of this indirect pushing force. And if you look at, it's also, I think the other important section to look at is the bottom of column 4. It says that, again, it has the motors exerting, the motors generate pushing forces against the lift-off. So again, in their invention, the motor is directly exerting a pushing force. They say that they characterize that as an important advantage of the invention. And there is nothing to suggest that this alternative reading, the indirect pushing by a pulling motor, would satisfy the safety concerns that Anne made in the end of the Schottky review. I don't understand how an electric motor can be said to be pushing or pulling. As I understand it, what an electric motor does is it has a drive shaft that rotates. And that's all of them. It rotates. It doesn't push, it doesn't pull, it rotates. And therefore, you always need some other mechanical gears or other parts to translate the rotational force into any other direction pushing force. So the motor never pushes. There isn't such a thing as a pushing motor. There's only an electric motor, the shaft of which rotates, which when coupled to something else will either push or pull. I think that's right. But isn't it the premise of your argument that to meet the limitation of this claim, that the motor itself must push and not pull. And I'm saying it can't do either, so it's a meaningless position. Well, but that's the position, your honor, that is taken in this patent. I think what he did is he didn't distinguish very carefully between the motor and the actuator. But because he doesn't separately talk about actuators in here, but that's what the patentee did. That's the way he described it because he goes on and on and on about motors that exert a pulling force, motors that exert a pushing force. That's the way he chose to describe it. And accepting his lexicography, the Burke motor pulls, it doesn't push. One of the Burke motors pushes. One does and one does, one pulls and one pushes, so it doesn't have a plurality that push. With respect to the forces themselves, the motors don't exert the force, it's the actuators, isn't it? I think that's probably right. It's not how he described it, but that would be my understanding. As Judge Michel points out, the motor only rotates. So you've got to translate that force. The force translation is through the actuator. And you have one actuator which pulls, you have an actuator that pushes. They have two actuators that push. That's correct. Is that the basic difference? Yes. And what he requires in the claim is a plurality that push, and one is a plurality. Of actuators. Correct. He talks only about motors, he never mentions actuators in this entire pattern, but it appears what he means is motors and actuators. But not dogs. Correct. If we're going to add in the actuator, why don't we add in the dog, too? Because I think you've got to look at what the pattern he described. Well, we are, we are. I'm not trying to defend it or say it's well written, but that's the distinction that he drew was based on motors slash actuators, but not with dogs. And I take it this conversation never happened on the trial level. The fact that, as my esteemed colleagues brought up, that motors don't really do either. I take it this technical conversation never happened. In fact, the claim might be not handling or, no. There was no such discussion with Judge Gilman. Correct. What about the bottom of page three, column three? Bottom of three? Bottom of column three? Yes. Starting on line 57, an important feature of the president's invention, so on and so forth, the bed lifts motors six and eight, apply pushing forces against their respective lift dogs. Isn't that brilliant? That's exactly consistent with my position. Now, I should point out, those are the other motors. Those are not the motors that affect the deck sections. Those are the ones that lift the entire ends of the bed. But it's still consistent. Everything, the motors themselves, motors slash actuators, apply a pushing force against the lift dogs. The Burke motor applies a pulling force against its lift dog. Well, it points out the advantage of the pushing force generated by the bed lift motors six and eight to lift a mattress will soon be described. Right, and that's described later on. I believe that's important that it describes that advantage. But it's the same advantage in all contexts. The safety features are the same, whether it's the motors that are lifting the ends of the frame or the motors that are lifting the mattress sections. It's always the same. And I guess the only other thing I would point out in regard with respect to the factual disputes, there's no witness that says that the Burke motor on the foot section applies a pushing force. They talk about, they all go to the sort of theory that the indirect pushing by a pulling motor, they try to substantiate that. But none of them goes to the direct issue of the Burke motor itself pulling or pushing. That's the issue that the judge ruled on. And that issue is ruled in this case. All right, thank you. Mr. Egbert, you have two minutes and a little more for rebuttal. I think the main thing to address right now is Mr. Stern indicated there was nothing in the patent indicating indirect forces being applied. And we respectfully disagree with Mr. Stern's analysis. Quite clearly, claim 12, which is the claim in issue in this case, talks about a plurality of motors for exerting a pushing force. He doesn't say for directly exerting a pushing force. He could have used other language other than for causing. Yeah, but he says the whole point of the invention was to avoid pulling forces because in the case of motor breakdown, that means there'll be a sudden collapse of a part of the bed. That's correct. So why isn't that an appropriate foundation against which to construe the meaning of the claim words is that we all know what they say, and we're trying to decide what they mean. Quite clearly, when the bed is mounted outside of the bed, it has a cable extending up over a pulley and attaches to elevate the section of the bed. When that motor breaks, it unrails the cable and it goes slamming down onto the surface of the frame. Quite clearly, that's why when it was in the specification, it talked about pulling motor and said, well, if it breaks, you collapse. Theirs doesn't collapse. Ours doesn't collapse. That type of prior part of the bed would collapse quite clearly. How do we know that yours doesn't collapse? Well, maybe it does. I mean, is there some evidence about this? The merits of our bed that we manufacture and sell, I can't say whether it would collapse or not. Apparently, when the patent attorney drafted the application, he felt that by creating the structure, it wouldn't collapse. And it makes sense to me why it wouldn't collapse because you have the structure underneath those sections of the bed to move the bed up and down. So even if it does collapse, it doesn't go very far. Well, and you're talking about constant resistance, which is what keeps it from collapsing. And the question is whether the indirect pushing exerted on the accused bed, perhaps a question is whether there's that constant resistance that would help it from collapsing, I think. That may be a bit of a fact issue that we would hope this court would send back to the judge or jury in some district of Texas. All right, we thank you both. We take the case under advisement. Thank you.